**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:08-cv-00584-PLF |
| ) | |
| Fox Television Stations, Inc., ) | |
|    Licensee of Stations KMSP-TV, ) | |
|    WJBK(TV), and WTTG(TV) ) | |
|    5151 Wisconsin Ave. NW ) | |
|    Washington, DC  20016, ) | |
| ) | |
| WDAF License, Inc., ) | |
|    Licensee of Station WDAF-TV ) | |
|    5151 Wisconsin Ave. NW ) | |
|    Washington, DC  20016, and ) | |
| ) | |
| TVT License, Inc., ) | |
|    Licensee of Station WTVT-TV ) | |
|    5151 Wisconsin Ave. NW ) | |
|    Washington, DC  20016, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

R. Clark Wadlow (DC Bar No. 33340)
Mark D. Hopson (DC Bar No. 394338)
James P. Young (DC Bar No. 445476)
David S. Petron (DC Bar No. 486325)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C.  20005
(202) 736-8000
mhopson@sidley.com
dpetron@sidley.com

*Attorneys for Defendants*

September 5, 2008

# TABLE OF CONTENTS

ARGUMENT. ...................................................................................................................3

I.    THIS COURT'S DE NOVO REVIEW UNDER 47 U.S.C. § 504 IS NOT
      CIRCUMSCRIBED. ...............................................................................................3

II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE PLAIN
      LANGUAGE OF § 1464. .......................................................................................7

      A.    The Complaint Fails to Allege the *Scienter* Required to Violate § 1464. ..............7

      B.    The Plain Language of § 1464 Does Not Prohibit the Broadcast of
            Allegedly Indecent Images. ...........................................................................12

      C.    47 C.F.R. § 73.3999 Is Not a Substantive Rule But Merely Restricts the
            Hours During which the FCC May Enforce § 1464. ..............................................14

III.  UNDER THE FCC'S INDECENCY PRECEDENTS, THE COMPLAINT FAILS
      TO STATE A VALID CLAIM..........................................................................16

      A.    The Broadcast at Issue Was Not Indecent as a Matter of the Law
            Established by the FCC's Own Prior Precedents......................................................16

      B.    The Viewer Complaints Received by the FCC in this Case Are Facially
            Insufficient Under the FCC's Stated Enforcement Policies. ................................18

IV.   THE CLAIMS ASSERTED BY THE COMPLAINT ARE BARRED BY THE
      FIRST AMENDMENT..........................................................................................19

      A.    The Emergence of the V-Chip, Which Did Not Exist at the Time of
            *Pacifica* and *ACT III*, Renders the FCC's Current Indecency Regime
            Unconstitutional..............................................................................................19

      B.    The FCC's Indecency Standard Is Indistinguishable From the Standard
            Struck Down in *Reno* v. *ACLU*..........................................................................21

CONCLUSION.................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action for Children's Television* v. *FCC*,
   852 F.2d 1332 (D.C. Cir. 1988) ............................................................................17, 21

*Action for Children's Television* v. *FCC*,
   932 F.2d 1504 (D.C. Cir. 1991) ...................................................................................15

*Action for Children's Television* v. *FCC*,
   59 F.3d 1249 (D.C. Cir. 1995) ..................................................................................4, 5

*Ashcroft* v. *ACLU*,
   542 U.S. 656 (2004) ....................................................................................................21

*AT&T Corp.* v. *FCC*,
   323 F.3d 1081 (D.C. Cir. 2003) ................................................................................6, 7

*Carter* v. *United States*,
   530 U.S. 255 (2000)......................................................................................................11

*CBS Corp.* v. *FCC*,
   535 F.3d 167 (3d Cir. 2008)................................................................................ *passim*

*Dial Info. Servs. Corp.* v. *Thornburgh*,
   938 F.2d 1535 (2d Cir. 1991) .....................................................................................21

*Dougan* v. *FCC*,
   21 F.3d 1488 (9th Cir. 1994) ........................................................................................5

*Farmer* v. *Brennan*,
   511 U.S. 825 (1994)....................................................................................................9, 12

*FCC* v. *Pacifica Found.*,
   438 U.S. 726 (1978) ..............................................................................................17, 21

*Fox Television Stations, Inc.* v. *FCC*,
   489 F.3d 444 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 1647 (2008) ..................7, 14

*Hamling* v. *United States*,
   418 U.S. 87 (1974)..................................................................................................10, 11

*Haynes* v. *United States*,
   390 U.S. 85 (1968)........................................................................................................13

*Manual Enters., Inc.* v. *Day*,
   370 U.S. 478 (1962) ...............................................................................................10, 16

*McNally* v. *United States*,
483 U.S. 350 (1987)............................................................................................14

*Pleasant Broadcasting* v. *FCC*,
564 F.2d 496 (D.C. Cir. 1977) ............................................................................5

*Reno* v. *ACLU*,
521 U.S. 844 (1997)..............................................................................19, 21, 22

*Roth* v. *United States*,
354 U.S. 476 (1957)............................................................................................11

*Sable Commnc's* v. *FCC*,
492 U.S. 115 (1989) ...........................................................................................20

*Safeco Ins. Co. of Am.* v. *Burr*,
127 S. Ct. 2201 (2007)........................................................................................9

*Secretary of Labor* v. *Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006) ..........................................................................18

*Smith* v. *California*,
361 U.S. 147 (1959)............................................................................................12

*Tallman* v. *United States*,
465 F.2d 282 (7th Cir. 1972) .............................................................................10

*United States* v. *Any and All Radio Station Transmission Equipment*,
204 F.3d 658 (6th Cir. 2000) ..............................................................................5

*United States* v. *Any and All Radio Station Transmission Equipment*,
207 F.3d 458 (8th Cir. 2000) ...........................................................................5, 6

*United States* v. *Bass*,
404 U.S. 336 (1971)............................................................................................14

*United States* v. *Dunifer*,
219 F.3d 1004 (9th Cir. 2000) .........................................................................5, 6

*United States* v. *Evergreen Media Corp.*,
832 F. Supp. 1179 (N.D. Ill. 1993) ....................................................................6

*United States* v. *Gypsum Co.*,
438 U.S. 422 (1978)............................................................................................9

*United States* v. *Playboy Entm't Group, Inc.*,
529 U.S. 803 (2000)..........................................................................11, 19, 20, 21

*United States* v. *Szoka*,
    260 F.3d 516 (6th Cir. 2001) ..............................................................5, 6

*United States* v. *X-Citement Video, Inc.*,
    513 U.S. 64 (1994)..............................................................................16

## Statutes and Rules

5 U.S.C. § 706............................................................................................4

18 U.S.C. § 1464.................................................................................. *passim*

28 U.S.C. § 2342........................................................................................4

47 U.S.C. § 312...................................................................................7, 8, 9

47 U.S.C. § 503.................................................................................8, 13, 16

47 U.S.C. § 504.................................................................................. *passim*

47 C.F.R. § 73.3999.......................................................................8, 14, 15, 16

An Act Making Appropriations for the Dep't's of Commerce, Justice, and State, Pub. L.
    No. 100-459, § 608, 102 Stat. 2186, 2228 (1988) ...................................15

Broadcast Decency Enforcement Act of 2005, Pub. L. No. 109-235, 120 Stat. 491 (2006).........13

Public Telecomms. Act of 1992, Pub. L. No. 102-356, 106 Stat. 949 (1992)..............................15

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56.........................................20

## Administrative Decisions

*Implementation of Section 551 of the Telecommunications Act of 1996*,
    13 FCC Rcd. 8232 (1998)........................................................................20

*Enforcement of Prohibitions Against Broad. Indecency in 18 U.S.C. § 1464*
    7 FCC Rcd. 6464 (1992)........................................................................15

*Enforcement of Prohibitions Against Broadcast Indecency in 18 U.S.C. § 1464*,
    8 FCC Rcd. 704 (1993)..........................................................................15

*Complaints Against Various Licensees Regarding Their Broadcast of the Fox Television
    Netwrok Program "Married By America" on April 7, 2003*,
    23 FCC Rcd. 3222..............................................................................3, 10

*Indus. Guidance on the Commn's Case Law Interpreting 18 U.S.C. § 1464 &*
  *Enforcement Policies Regarding Broad. Indecency*,
  16 FCC Rcd. 7999..................................................................................................... *passim*

## Legislative History

138 Cong. Rec. S7304, S7308 (daily ed. June 2, 1992) ...............................................15

## Other Authorities

Federal Communications Commission, *Indecency Complaints and NALs: 1993–2006*,
  http://www.fcc.gov/eb/oip/ComplStatChart.pdf. ...................................................14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>        Plaintiff, )<br><br>        v. )<br><br>Fox Television Stations, Inc., )<br>    Licensee of Stations KMSP-TV, )<br>    WJBK(TV), and WTTG(TV) )<br>    5151 Wisconsin Ave. NW )<br>    Washington, DC  20016, )<br><br>WDAF License, Inc., )<br>    Licensee of Station WDAF-TV )<br>    5151 Wisconsin Ave. NW )<br>    Washington, DC  20016, and )<br><br>TVT License, Inc., )<br>    Licensee of Station WTVT-TV )<br>    5151 Wisconsin Ave. NW )<br>    Washington, DC  20016, )<br><br>        Defendants. )<br>          ) | Civil Action No. 1:08-cv-00584-PLF |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Defendants Fox Television Stations Inc. and TVT License Inc. (collectively "Fox")[1]

submit this reply memorandum of points and authorities in support of their motion to dismiss the

Complaint.

---

[1] On July 11, 2008, defendant WDAF License, Inc. separately moved to dismiss the complaint against it because that licensee had paid the forfeiture.  *See* Docket No. 15.  The complaint against WDAF is therefore moot.  On July 23, 2008, the Government confirmed that WDAF had paid the forfeiture and stated that it had no opposition to the motion to dismiss WDAF.  *See* Docket No. 16.  At present, the Court has not yet dismissed WDAF License, Inc.

In its Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint, Docket No. 13 ("Motion"), Fox demonstrated that the Government's Complaint failed to state a claim for a number of independent reasons. The Government's principal response is an attempt at avoidance. Although § 504(a) of the Communications Act is clear that Fox is entitled to a "trial de novo," the Government claims that this Court can only look at "disputed factual matters" and must accept all of the FCC's legal positions as a given, no matter how at odds with the statute and no matter how blatantly unconstitutional. That is not what "de novo" means. The statute permits Fox to raise any defense to the imposition of a forfeiture in this case, factual or legal (including constitutional defenses), and this Court cannot order any forfeiture until it has fully considered both the factual basis *and* the legality of such a punishment.

On the merits, the Government's half-hearted responses are incorrect. With respect to *scienter*, the Government apparently has abandoned the theory on which it relied in its Complaint—a wise move in light of the Third Circuit's rejection of the FCC's position since Fox filed its Motion. Although the Government does not clearly articulate its proposed standard for *scienter*, the bottom line is that it has not (and cannot) allege facts that would meet the constitutional minimum. Similarly, the Government cannot dispute that the indecency statute by its plain terms does not apply to images. In response, it argues only that "it *ought* to."

The Government's Opposition also does not meaningfully address the fact that the FCC had never, prior to this order, punished a broadcast containing pixilation and no actual "depiction" of sexual organs or activities, and that the FCC has not explained that departure from its precedents. The Government also fails to explain why it has ignored the longstanding policy of requiring a *bona fide* complaint from a viewer as a prerequisite to any enforcement action

2

against a broadcaster. To the contrary, it literally asserts the right to act as an entirely self-appointed, roving board of censorship, imposing massive fines in the absence of any complaint whatsoever. However, these departures from established policies and precedents raise serious constitutional issues and fly in the face of the FCC's repeated promises to the courts to enforce the statute with restraint.

Finally, as Fox showed, any forfeiture here would be unconstitutional under several recent Supreme Court opinions, and the Government offers no sound response to these arguments.

## ARGUMENT

### I.    THIS COURT'S DE NOVO REVIEW UNDER 47 U.S.C. § 504 IS NOT CIRCUMSCRIBED.

In a preliminary statement on "scope of review," the Government erroneously asserts that the Court's authority here is limited to "disputed factual matters." *See* Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket No. 18, at 9 n.2 (emphasis omitted) ("Opp."). The statute, however, is quite clear: "any suit for the recovery of a forfeiture imposed pursuant to the provisions of this Chapter shall be a trial de novo." 47 U.S.C. § 504(a). Accordingly, Fox may advance any argument against the forfeiture that could have been pressed before the FCC—including not only factual matters but also any legal argument against the forfeiture. *See, e.g., Complaints Against Various Licensees Regarding Their Broadcast of the Fox Television Network Program "Married By America" on April 7, 2003*, 23 FCC Rcd. 3222, ¶¶ 27-38 (2008) ("*Forfeiture Order*") (addressing constitutional arguments Fox made in the forfeiture

proceeding).[2]  Any other interpretation of § 504 would stand the meaning of "a trial de novo" on its head.

None of the authorities the Government cites provides any support for limiting the scope of a § 504(a) action.  For example, the D.C. Circuit's opinion in *ACT IV* did not purport to decide the scope of a trial de novo under § 504(a); that case involved a declaratory judgment action, not a forfeiture collection action under § 504(a).  *See Action for Children's Television* v. *FCC*, 59 F.3d 1249, 1252 (D.C. Cir. 1995) ("*ACT IV*") (noting that the case involved a facial challenge). Moreover, the Court (in an aside) made clear that "[i]n defending that suit the broadcaster is entitled to a trial de novo on the question whether its broadcast was indecent"—which necessarily means that the broadcaster may show that the broadcast was not indecent as a matter of either law or fact.  *Id.* at 1254 (quoted in Opp. at 8).

The Government's attempt to read § 504 as echoing the Administrative Procedure Act ("APA") is also without merit.  *See* Opp. at 9 n.2.  First, this is a collection action under 47 U.S.C. § 504(a); the APA does not govern the scope of the Court's authority in this case. Second, and more importantly, even if the APA did govern, that statute does not limit the court's review solely to disputed factual matters, as the Government suggests.  Under the APA, a court "shall decide all relevant questions of law" and "interpret constitutional and statutory provisions."  5 U.S.C. § 706.  Even if the APA applied, this Court could rule against the agency for a variety of reasons, including on the basis of constitutional rights and statutory limitations like those articulated in Fox's motion to dismiss.  *See id.* §§ 706(2)(B), (C).  Although the APA also allows a court to base its decision on the facts determined in a trial de novo, *see id.*

---

[2] The Government's brief is unclear as to exactly what it is arguing; in the text, it appears to be arguing merely that constitutional arguments are barred, but in the footnotes it argues much more aggressively that all legal arguments are barred and the Court may adjudicate only the facts and the amount of the forfeiture.

§ 706(2)(F), that authority does not exclude the other bases of review afforded by the APA. Indeed, even the legislative history the Government cites indicates that Congress wanted broadcasters to have the "opportunity to contest *on the merits* the action of the Commission." Opp. at 9 n.2 (quoting S. Rep. No. 1857 at 10; emphasis added).

Moreover, the Government's contention that the Court of Appeals has "exclusive" jurisdiction under the Hobbs Act (28 U.S.C. § 2342(1)) over constitutional challenges to this proposed forfeiture is fundamentally mistaken. As the D.C. Circuit has held, § 504(a) is a special review provision vesting jurisdiction in this Court instead of in the Court of Appeals. In other words, § 504 *supplants* the jurisdiction that would otherwise reside in the Court of Appeals under § 2342. *See Pleasant Broad.* v. *FCC*, 564 F.2d 496, 500-501 (D.C. Cir. 1977); *Dougan* v. *FCC*, 21 F.3d 1488, 1490-91 (9th Cir. 1994); *see also ACT IV*, 59 F.3d at 1256 (finding that district court had jurisdiction over constitutional challenge to FCC's scheme for enforcing indecency forfeitures because forfeiture collection action itself would be in the district court). Section 2342 poses no jurisdictional bar to the type of statutory and constitutional arguments Fox has made in this case. *See United States* v. *Any and All Radio Station Transmission Equip.*, 204 F.3d 658, 667 (6th Cir. 2000) ("*Strawcutter*").[3]

None of the cases relied upon by the Government supports its contrary view, because all of those cases arose in materially different procedural and jurisdictional postures. First, all of the cases cited by the Government depend in critical part on the fact that the litigants there were attempting to challenge FCC regulations—*i.e.*, expunge a rule from the Code of Federal Regulations—outside of the ordinary procedures for administrative review of an agency

---

[3] The Government wrongly suggests *Strawcutter* has been undermined by subsequent Sixth Circuit decisions, *see* Opp. at 10 n.3, but the Sixth Circuit's last decision in this area expressly noted that "[o]ur holding [in this later case] is not meant to cast any doubt on this court's prior holding in *Strawcutter*." *United States* v. *Szoka*, 260 F.3d 516, 530 n.13 (6th Cir. 2001).

rulemaking.  *See United States* v. *Dunifer*, 219 F.3d 1004, 1008 n.8 (9th Cir. 2000) (no district court jurisdiction over challenges to FCC regulations, and emphasizing the difference between regulatory and statutory challenges); *United States* v. *Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 461 (8th Cir. 2000) ("*Fried*") (recognizing that "Fried was really challenging the constitutionality of the microbroadcasting regulations, rather than the forfeiture order itself").  Fox's motion to dismiss does not challenge any FCC regulation; it simply raises legal defenses to the Government's collection action predicated on an FCC adjudication.  In fact, there is no substantive FCC regulation at issue in this case at all, because the FCC enforces its broadcasting indecency regime through adjudications.

Second, none of the cases relied upon by the Government arose in the context of an action under § 504(a) to collect a monetary forfeiture.  *See Dunifer*, 219 F.3d at 1005 (declaratory and injunctive action filed by government, apparently under 47 U.S.C. § 401); *Fried*, 207 F.3d at 460 (in rem action to "arrest" radio equipment brought under 47 U.S.C. § 510); *United States* v. *Szoka*, 260 F.3d 516, 521 (6th Cir. 2001) (injunctive action to enforce administrative cease-and-desist order filed under 47 U.S.C. § 401(b)).  All of these actions involved different statutory schemes in which Congress struck different balances between the jurisdiction of the district court and the court of appeals.  In the only indecency forfeiture collection action brought under § 504(a), the broadcaster raised legal arguments in a motion for judgment on the pleadings, and the district court evaluated those legal arguments on their merits. *See United States* v. *Evergreen Media Corp.*, 832 F. Supp. 1179 (N.D. Ill. 1993).  Fox's statutory and constitutional arguments similarly are within the scope of this Court's review.

At bottom, the Government's position is contrary to the statutory scheme and would raise substantial constitutional issues by limiting review of a government penalty imposed on conduct

protected by the First Amendment.  As the Government would have it, broadcasters must choose between either (1) paying an unconstitutional forfeiture and then filing a petition for review in the Court of Appeals, *see* Opp. at 10 n.4, where any review is limited to the administrative record and deference is given to the FCC's factual determinations;[4] or (2) defending a collection action brought under § 504(a), where (according to the Government) broadcasters can litigate only disputed factual matters but not constitutional or statutory issues.  But § 504(a) does not actually create this dilemma.  Indeed, the Government concedes that the forfeiture at issue here implicates these statutory and constitutional issues, because it concedes that Fox *could* raise these arguments if it paid the fine and petitioned for review of the forfeiture order.  *See* Opp. at 10 n.4. It is illogical to assert, however, that Fox would have arguments against this order in the Court of Appeals that could not be asserted in a (necessarily more expansive) *de novo* collection proceeding.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE PLAIN LANGUAGE OF § 1464.

### A.    The Complaint Fails to Allege the *Scienter* Required to Violate § 1464.

As Fox showed, the Complaint must be dismissed because it fails to allege that the defendants acted with the mental state required to establish a violation of 18 U.S.C. § 1464.  The Complaint's allegations of *scienter* are based entirely on the "willful" standard in 47 U.S.C. § 312.  *See* Motion at 6; Complaint, Docket No. 1, ¶ 37.  As the FCC has repeatedly made clear, under its view § 312 is essentially a strict liability standard as to the content of the show.  The

---

[4] *AT&T Corp.* v. *FCC*, 323 F.3d 1081 (D.C. Cir. 2003), which recognized the viability of this option, makes an appeal available only after the broadcaster pays the forfeiture and thus divests the district court of its jurisdiction under § 504(a) by mooting any action to collect the forfeiture. *See id.* at 1085.  As the FCC has recognized, Fox has a right not to pay the forfeiture before fully contesting its validity.  *See Indus. Guidance on the Comm'n's Case Law Interpreting 18 U.S.C. § 1464 & Enforcement Policies Regarding Broadcast Indecency*, 16 FCC Rcd. 7999, ¶ 29 (2001) ("*Indecency Policy Statement*").

FCC's attempt to impose massive fines on broadcasters for spontaneous utterances on live programs where the broadcaster had no intention of broadcasting indecent material is now under review by the Supreme Court.  *See, e.g., Fox Television Stations, Inc.* v. *FCC*, 489 F.3d 444 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 1647 (2008).  As Fox demonstrated, however, § 312 does not apply to an action to enforce § 1464.  *See* Motion at 8-10.

The Government's only answer, buried in a footnote, is a citation to a House Report indicating that Congress intended the § 312 definition to apply also to § 503, which also uses the term "willful."  *See* Opp. at 12 n.5.  But as Fox explained, Congress used the word "willful" only in § 503(b)(1)(A) and (B)—*not* in § 503(b)(1)(D), which is the section governing actions to enforce § 1464.  Congress purposefully separated § 1464 actions into a separate subsection that does not use the term "willful" in recognition of the fact that the willful standard as defined in § 312 would be inappropriate in the indecency context and would punish far too much speech. *See* Motion at 9.  The Government has no response to this argument, and the Third Circuit has recently rejected the FCC's position on this point.  *CBS Corp.* v. *FCC*, 535 F.3d 167, 203-08 (3d Cir. 2008).

Moreover, even if the § 312 "willful" standard governs in assessing forfeitures under § 503(b)(1)(B) for violations of the FCC's rules, that would not be relevant in this case because there is no FCC rule at issue here.  The Government's attempt to frame its claim under 47 C.F.R. § 73.3999 fails because that rule is not a substantive prohibition but merely a safe harbor for indecent broadcasts—as the Third Circuit has now held.  *See* Motion at 9-10; Section II.C, *infra*; *CBS Corp.*, 535 F.3d at 201-03.  And even if the rule did impose a substantive "willfulness" standard borrowed from § 312, the Constitution requires a higher level of *scienter*.  *See* Motion at 10.  The Government offers no response to these arguments.

The Complaint should be dismissed because it relies entirely on the inapplicable "willful" standard. Indeed, in the wake of the Third Circuit's recent holdings eliminating the basis for the FCC's theories of *scienter*, the Government appears to have decided that its Complaint now will stand or fall on the *scienter* standard of § 1464 itself, rather than § 312. It concedes, as it must, that although 18 U.S.C. § 1464 "does not expressly specify a requisite mental state," a *mens rea* element must be read into the statute and the appropriate level of intent must be pled and proved for a violation to be stated. Opp. at 11-13; *see, e.g.*, *United States* v. *Gypsum Co.*, 438 U.S. 422, 436 (1978) (invoking the "interpretative presumption that *mens rea* is required" in a criminal statute, "even when the statutory definition [does] not in terms so provide").

In keeping with the Third Circuit's ruling, the Government appears now to concede that the Constitution demands that at least a "recklessness" standard be read into any statute affecting rights of freedom of expression, to avoid unnecessarily chilling legitimate speech. *See* Opp. at 12 ("[r]ecklessness would appear to suffice as the appropriate scienter threshold for the broadcast indecency regime") (quoting *CBS Corp.*, 535 F.3d at 206 (dicta)).[5] The Complaint's allegations do not meet such a standard. A recklessness standard would require proof of an "unjustifiably high risk of harm that is either known [to the defendant] or so obvious that it should be known." *Safeco Ins. Co. of Am.* v. *Burr*, 127 S. Ct. 2201, 2215 (2007). In the context of 18 U.S.C. § 1464, this means that the government must prove the broadcaster actually recognized that the airing of the program entailed a significant risk of showing "indecent" content but nevertheless aired the program. *See Farmer* v. *Brennan*, 511 U.S. 825, 836-37 (1994) (defining "recklessness" in the criminal context to require proof that the defendant "knows of and disregards an excessive risk";

_____

[5] Fox disagrees with the Third Circuit's view, expressed in dicta, that the *scienter* standard under § 1464 is as low as "recklessness." *See CBS Corp.*, 535 F.3d at 206. But the court need not decide this issue because, as explained *infra*, the Complaint fails to allege that Fox acted recklessly.

the defendant "must both be aware of facts from which the inference could be drawn that a serious risk of harm exists, and he must also draw that inference"). The Government, however, has not made any such allegation in the Complaint, nor would it have any basis for doing so.

The FCC—which was proceeding on its (then) belief that state of mind was irrelevant—made no inquiry or findings in the forfeiture proceeding as to whether Fox consciously assumed an "unjustifiably high risk of harm" in broadcasting this show. It merely found, as the Complaint alleges, that Fox "consciously and deliberately" broadcast the program (in the sense of specifically intending to broadcast the signal). There are *no findings*, *and no allegations*, regarding Fox's state of mind as to the content of the program. *See* Complaint ¶ 39; *Forfeiture Order* ¶ 39.

The Government points to its assertion that Fox "could have" known of or "could have" prevented the indecent content, but those allegations are at most a claim of negligence. *See Manual Enters., Inc.* v. *Day*, 370 U.S. 478, 492-93 (1962) (Harlan, J.) (proof "that a defendant did not make a 'good faith' effort to ascertain the character of the . . . materials" is not adequate to support conviction for distributing "obscene" materials). Moreover, the Complaint fails to allege that Fox knew of the episode's *nature*—*i.e.*, whether the content might be deemed "indecent." The Government cites *Hamling* v. *United States*, 418 U.S. 87 (1974)—an obscenity case—for the proposition that the government need not "prove a defendant's knowledge of the legal status of the materials he distributes." Opp. at 11. But, even assuming *Hamling* applied here, that opinion recognizes that the Government must establish that the defendant not only knew of the "content" of the material but also understood its "nature" and "character." 418 U.S. at 123. In other words, under *Hamling*, while the defendant need not have known to a certainty that the materials satisfied the legal definition of "obscene," he or she must have recognized that

10

their nature was such that they reasonably *could* satisfy that definition. *See id.*; *see also Tallman* v. *United States*, 465 F.2d 282, 287 (7th Cir. 1972) (stating that a violation of 18 U.S.C. § 1464 for uttering "obscene" language requires proof that the defendant understood "that uttering the words he did over the air was a public wrong"). Nowhere does the complaint in this case suggest that the defendants understood that the scenes in *Married By America* were potentially "indecent." The absence of such an allegation is not surprising given that the FCC's finding of indecency in this case was unprecedented.

  *Hamling* is inapplicable in any event. That case dealt with "obscene" speech and held that the government need not prove the defendant's knowledge that the materials satisfied the legal definition of obscenity to support a conviction for distribution of those materials. 418 U.S. at 123. This conclusion was justified in that context because "obscene" speech is not protected by the First Amendment, *see Roth* v. *United States*, 354 U.S. 476, 481-85 (1957), and the distributor of "obscene" materials is not engaged in inherently "innocent" conduct. There is thus no need to interpose a higher *mens rea* requirement "to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter* v. *United States*, 530 U.S. 255, 269 (2000) ("The presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'") (quoting *United States* v. *X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)).

  The opposite is true for "indecent" speech, which is fully protected under the Constitution. *United States* v. *Playboy Entm't Group, Inc.*, 529 U.S. 803, 811-12 (2000). A distributor of "indecent" materials is therefore engaged in presumptively "innocent" conduct, for purposes of the Constitution. Without any allegation that Fox knew the nature of the *Married By America* episode was potentially indecent (an allegation the Government cannot make based on

the information gathered in the FCC's administrative investigation), the complaint fails to state a violation of 18 U.S.C. § 1464.[6]

**B.     The Plain Language of § 1464 Does Not Prohibit the Broadcast of Allegedly Indecent Images.**

In its motion to dismiss, Fox established that the plain language of § 1464 does not prohibit the broadcast of allegedly indecent images, as opposed to the "utter[ance of] . . . indecent . . . language."  Motion at 11-13.  Since Fox's motion, the Third Circuit has noted that "the text [of § 1464] on its face only reaches spoken words . . . ."  *CBS Corp.*, 535 F.3d at 184.

The Government cannot dispute that the plain text of the statute is limited to spoken language.  *See* Opp. at 13-14.  Instead, it tries to argue that it is just "accepted" that the statute also bans an entire additional category of broadcasts (involving images) that is never mentioned in the statute.  *Id.* at 14.  But neither authority it cites supports its argument.  The Third Circuit did not hold to the contrary *CBS Corp.*, for the simple reason that the scope of § 1464's prohibition was not raised or briefed in that case.  The Third Circuit had no opportunity to "question the Commission's authority to regulate indecent images," Opp. at 14 n.6.  Its assumption that § 1464 applied to the broadcast at issue simply reflected that the point was not contested in that case.

---

[6] The Government relies on isolated dicta from the Third Circuit for the proposition that "[t]he airing of scripted indecency or indecent material in pre-recorded programming would likely show recklessness, or may even constitute evidence of actual knowledge or intent."  Opp. at 12 (quoting *CBS Corp.*, 535 F.3d at 207).  However, this statement is not supported by any citation to other authority and is flatly inconsistent with the definition of "recklessness" approved by the Supreme Court, which requires proof of actual awareness of the risk of harm.  *See Farmer*, 511 U.S. at 836-37 ("recklessness" requires proof that the defendant was actually "aware of facts from which the inference could be drawn that a serious risk of harm exists" and that the defendant actually "dr[e]w that inference").  The Third Circuit's dicta also seems to reflect an unjustified concern over possible difficulties in establishing proof of a defendant's state of mind, a concern that the Supreme Court has already rejected as unfounded.  *See Smith* v. *California*, 361 U.S. 147, 154 (1959) ("[I]t has been some time now since the law viewed itself as impotent to explore the actual state of a man's mind.").

The Government's reliance on the Broadcast Decency Enforcement Act of 2005 is unavailing. *See* Broadcast Decency Enforcement Act of 2005 ("BDEA"), Pub. L. No. 109-235, 120 Stat. 491 (2006) (to be codified at 47 U.S.C. § 503(b)(2)). That enactment established a tenfold increase in the maximum penalty for violations of § 1464 but did nothing to alter the substantive scope of § 1464's prohibition. Most pertinently, however, the actual text of the BDEA precisely tracks the express terms of § 1464, enhancing the maximum forfeiture amount only when a broadcaster is "determined by the Commission . . . to have broadcast obscene, indecent or profane *language* . . . ." *Id.* § 2 (emphasis added). Although the Government quotes some snippets of the legislative history of the BDEA, these statements provide no basis for contradicting the plain language of § 1464 (or the BDEA itself), especially given that "[t]he views of a subsequent Congress of course provide no controlling basis from which to infer the purposes of an earlier Congress." *Haynes* v. *United States*, 390 U.S. 85, 87 n.4 (1968).[7]

The fact that this issue is arising only now should not be surprising, because until the FCC's recent push to aggressively punish broadcasters for their constitutionally protected speech, most of the FCC's indecency enforcement activity was directed towards radio "shock jocks" who uttered indecent language during their radio programs. The FCC rarely addressed allegedly indecent images on television broadcasts, and when it did, it usually found that they were not indecent. *See generally Indus. Guidance on the Comm'n's Case Law Interpreting 18 U.S.C. § 1464 & Enforcement Policies Regarding Broad. Indecency*, 16 FCC Rcd. 7999 (2001) ("*Indecency Policy Statement*") (citing, among dozens of FCC indecency enforcement actions,

---

[7] The Government also misunderstands the importance of the Communication Act's definition of "radio communication," which includes the transmission of "pictures." *See* Opp. at 13. As Fox explained in its Motion, the fact that Congress was aware in 1927 (when it enacted the original statute that became the present-day § 1464) that pictures could be broadcast by radio waves means that § 1464's focus on spoken words is not merely an anachronism born of the era before television but was in fact a conscious legislative choice.

only four television broadcasts, none of which were found to be indecent).[8]  It was only in 2004, after the Janet Jackson incident during the Super Bowl Halftime Show, *see CBS Corp.*, 535 F. 3d at 171-72 (describing broadcast), that the FCC began aggressively enforcing § 1464 against allegedly indecent television broadcasts.  *See Fox Televisions Stations, Inc.* v. *FCC*, 489 F.3d 444, 451-52 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 1647 (2008) (describing the FCC's abandonment of its previous policy of caution and restraint).

In the end, the Government has no answer to this argument.  The Government simply throws up its hands and protests that § 1464 must sweep more broadly than its plain language.  But where Congress enacts a criminal law, especially a criminal law that constrains constitutionally protected speech, the textual limits of the statute must be observed.  *See McNally* v. *United States*, 483 U.S. 350, 359-60 (1987); *United States v. Bass*, 404 U.S. 336, 348 (1971).

C.    **47 C.F.R. § 73.3999 Is Not a Substantive Rule But Merely Restricts the Hours During which the FCC May Enforce § 1464.**

Although the Government also purports to rely on 47 C.F.R. § 73.3999, *see* Opp. at 15-16, that FCC rule is not a substantive prohibition and therefore cannot be used to state an independent claim for relief.  *See* Motion at 9-10.  Since Fox's Motion, the Third Circuit has squarely rejected the Government's interpretation of § 73.3999 on this point in *CBS Corp.*, 535 F.3d at 202.  That Court noted that the very caption of § 73.3999 was limited to "Enforcement of 18 U.S.C. § 1464" and, after carefully tracing the history of this provision, concluded that "the

---

[8] The FCC's own enforcement statistics similarly demonstrate that the FCC's historical focus on allegedly indecent radio broadcasts has only recently shifted to TV broadcasts.  *See* Federal Communications Commission, *Indecency Complaints and NALs: 1993–2006*, http://www.fcc.gov/eb/oip/ComplStatChart.pdf.

rule merely enforces 18 U.S.C § 1464 and does not serve as an independent prohibition on indecency in broadcasting." *See id.* at 201.[9]

That history establishes that the FCC's rule is not substantive but instead serves only to establish a safe harbor during which otherwise indecent language can be broadcast without sanction. *See CBS Corp.*, 535 F.3d at 202 (summarizing history). The original version of § 73.3999 was promulgated in response to a specific Congressional directive that the FCC create regulations "in accordance with section 1464" to enforce broadcast indecency restrictions on a 24-hour-per-day basis.[10] When the 24-hour indecency rule was invalidated by the D.C. Circuit,[11] Congress responded with legislation requiring a limited safe harbor for indecent broadcasts between certain hours.[12] Contrary to the Government contention, *see* Opp. at 15, this latter statute was not some novel legislation addressing broadcast indecency afresh. Rather, that legislation simply ordered the FCC to establish the safe harbor hours during which it would not enforce § 1464,[13] and the FCC recognized from the outset that any rule it promulgated under the legislation must accord with § 1464.[14] The FCC consistently has treated § 73.3999 as doing

---

[9] Notably, the Government cites *CBS Corp.* several times in its Opposition, but it studiously avoids mentioning the Third Circuit's holding on this issue, which decisively refutes the Government's position.

[10] *See* An Act Making Appropriations for the Dep'ts of Commerce, Justice, and State, Pub. L. No. 100-459, § 608, 102 Stat. 2186, 2228 (1988).

[11] *See Action for Children's Television* v. *FCC*, 932 F.2d 1504 (D.C. Cir. 1991).

[12] *See* Public Telecomms. Act of 1992, § 16(a), Pub. L. No. 102-356, 106 Stat. 949, 954 (1992).

[13] *See* 138 Cong. Rec. S7304, S7308 (daily ed. June 2, 1992) (statement of Sen. Byrd) (purpose of amendment was to "extend the FCC's enforcement authority . . . through the hour of 12 o'clock midnight").

[14] *See Enforcement of Prohibitions Against Broad. Indecency in 18 U.S.C. § 1464*, 7 FCC Rcd. 6464 (1992) (treating indecency regulation required by the Public Telecommunications Act as a means of enforcing § 1464); *Enforcement of Prohibitions Against Broadcast Indecency in 18 U.S.C. § 1464*, 8 FCC Rcd. 704, ¶ 2 (1993) (promulgating new version of § 73.3999 "in

nothing more than establishing the times of day during which § 1464 is to be enforced. *See Indecency Policy Statement* ¶ 5 (describing history of § 73.3999 and its relationship to § 1464). "Accordingly, the Commission's proffered interpretation of 47 C.F.R. § 73.3999, which appears to contradict the plain language of the regulation as well as the history of its adoption, would appear to be erroneous and inconsistent with the regulation." *CBS Corp.*, 535 F.3d at 202.

Furthermore, the Government's interpretation of § 73.3999 would eviscerate the forfeiture scheme that Congress carefully crafted in 47 U.S.C. § 503(b). Congress purposefully separated the statutory provisions governing indecency forfeitures for violations of § 1464 and forfeitures for violations of other administrative rules, and any interpretation of the forfeiture statute must give effect to that statutory design, as Fox previously explained. *See* Motion at 10. The Government proffers no argument against this construction of the forfeiture statute, nor can it. Nor does the Government contest Fox's argument that, even if § 73.3999 were an independent, substantive prohibition, it would necessarily require a showing of *scienter* to support a violation because it is a content-based regulation of speech. *See Manual Enters.*, 370 U.S. at 492-93; *X-Citement Video*, 513 U.S. at 71. As the Third Circuit held, "the FCC cannot do by administrative rule that which Congress is constitutionally prohibited from doing by statute." *CBS Corp.*, 535 F.3d at 202.

## III. UNDER THE FCC'S INDECENCY PRECEDENTS, THE COMPLAINT FAILS TO STATE A VALID CLAIM.

### A. The Broadcast at Issue Was Not Indecent as a Matter of the Law Established by the FCC's Own Prior Precedents.

The Government suggests that the pixilation of nude body parts does not remove the broadcast from the legal definition of indecency. *See* Opp. at 24. But it is the Government that

---

accordance with" § 1464). The very titles of these orders betray that § 73.3999 merely enforces § 1464.

is ignoring the plain language of the FCC's definition of indecency, which requires the material in question to "depict[] . . . sexual . . . organs." *See Indecency Policy Statement* ¶ 4. If the "nudity" is "obscured," as it was in *Married By America*, it follows that no sexual organs were depicted, and the broadcast fails to satisfy the FCC's definition of indecency. Complaint ¶¶ 20, 21. The cases cited in Fox's Motion simply confirm that the FCC has always made this distinction between broadcasts that actually depict nudity and those that obscure the images in some manner. *See* Motion at 16 (citing FCC decisions).

The foundational requirement that the broadcast "depict[] . . . sexual . . . organs" is a prerequisite to the second part of the Commission's indecency analysis—*i.e.*, whether the broadcast was patently offensive as measured by contemporary community standards for the broadcast medium. Here, the FCC considers the full context of the broadcast, including whether the broadcast was "graphic and explicit." *See Indecency Policy Statement* ¶ 10. Again, FCC precedent demonstrates that pixilating the sexual organs such that the depiction was no longer clear and unmistakable, as was done in *Married By America*, obscures the graphic nature of the broadcast. Thus, broadcasts of numerous programs where the sexual activity was only "suggestive," where "viewers are left to surmise what is happening" off camera, and where the depiction is "not clear," were found by the FCC not to be indecent. *See* Motion at 16-17.

The FCC's longstanding practice of limiting enforcement to those broadcasts that actually "depict" something that is "graphic and explicit" is not surprising given the constitutional obligation to proceed with restraint in applying § 1464. *See FCC* v. *Pacifica Found.*, 438 U.S. 726, 750 (1978); *Action for Children's Television* v. *FCC*, 852 F.2d 1332, 1340 n.14 (D.C. Cir. 1988) ("*ACT I*"). The FCC has never attempted to expand § 1464's ban on indecent broadcasts to programs, such as *Married By America*, that do not in fact "depict"

anything but instead require viewers to infer what might be happening.  To hold otherwise would be to eliminate one of the primary limits on the FCC's ability to censor programs that do not fit within the legal definition of indecency.

**B.    The Viewer Complaints Received by the FCC in this Case Are Facially Insufficient Under the FCC's Stated Enforcement Policies.**

As Fox demonstrated, the Complaint must be dismissed because the Government has not (and cannot) allege that the FCC based its *Forfeiture Order* on *bona fide* complaints.  *See* Motion at 19-22.  In response, the Government literally asserts that the FCC could, consistent with the First Amendment, become a self-appointed roving board of censorship, initiating indecency enforcement proceedings on its own and imposing multimillion dollar fines on broadcasters in the absence of any indication that there were any viewers that actually watched the show and were offended.  *See* Opp. at 27-28.  The Government's only argument in support of this sweeping proposition is the fact that § 1464 does not explicitly say that a complaint is a condition precedent to a forfeiture.  *See* Opp. at 27.  But the Government ignores the long history of constitutional litigation over the FCC's indecency regime, in which both the Supreme Court and the lower courts have emphasized the need for restraint and in which the FCC has repeatedly promised the courts to observe that restraint.  *See* Motion at 13-15.  Permitting the FCC to levy fines on broadcasters without *bone fide* complaints would raise serious constitutional issues and would breach a important constraint on the FCC's discretion—especially in this day and age in which advocacy groups can easily generate form complaints by members of those groups.

The Government claims that enforcement decisions generally are not reviewable, but the very case it cites makes clear that agency enforcement decisions are reviewable when they can be measured against an intelligible policy.  *See Secretary of Labor* v. *Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006).  Here, there is an easily graspable rule:  the FCC cannot initiate

an enforcement action unless someone who actually watched the show when it was broadcast has filed a complaint.[15]  Because the FCC did not follow its own policy or abide by its promises to the courts to act with restraint, and because it has not explained why it has departed from its policy, its forfeiture proceeding (and resulting order) is void.  It is indisputable that the Government has no authority to pursue civil forfeitures in the absence of a valid, predicate FCC forfeiture order, *see* 47 U.S.C. § 504, and therefore the Complaint should be dismissed.

## IV.    THE CLAIMS ASSERTED BY THE COMPLAINT ARE BARRED BY THE FIRST AMENDMENT.

### A.    The Emergence of the V-Chip, Which Did Not Exist at the Time of *Pacifica* and *ACT III*, Renders the FCC's Current Indecency Regime Unconstitutional.

The Government mischaracterizes Fox's argument with respect to the V-Chip as a "factual" dispute that precludes resolution at this stage in the litigation.  *See* Opp. at 19.  To the contrary, the availability of a less restrictive alternative—such as the V-Chip—renders the FCC's content-based regulation of indecent speech on broadcast television unconstitutional as a matter of law.

Content-based restrictions on broadcast programming are constitutional only if they are narrowly tailored.  *Reno* v. *ACLU*, 521 U.S. 844, 879 (1997).  To be "narrowly tailored," a regulation must represent the "least restrictive" means to address the relevant governmental interest.  *Playboy*, 529 U.S. at 811-15.  "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it."  *Id.* at 815.  It is not enough to defeat the viability of the V-Chip as a less restrictive alternative for the Government to suggest

---

[15] The FCC recognizes this limitation in its *Indecency Policy Statement*.  *See Indecency Policy Statement* ¶ 24 ("The Commission does not independently monitor broadcasts for indecent material.  Its enforcement actions are based on documented complaints of indecency broadcasting received from the public.").

that there exist some concerns about the efficacy of the V-Chip.  *See* Opp. at 19-20.  The First Amendment does not demand that an alternative to a content-based regulation be perfect or immune from criticism in order for it to constitute an effective, less restrictive alternative. *Playboy*, 529 U.S. at 824 ("It is no response that voluntary blocking technology requires a consumer to take action, or may be inconvenient, or may not go perfectly every time."); *Sable Commc'ns* v. *FCC*, 492 U.S. 115, 128 (1989).  The FCC has not established that the V-Chip is a systematically ineffective means of giving viewers control over what content comes into their homes.

In fact, the FCC has already given the V-Chip its stamp of approval, the significance of which the Government endeavors to minimize.  *See* Opp. at 20-21.  In the Telecommunications Act of 1996, Congress directed the FCC to determine whether the TV Parental Guidelines used by the V-Chip were "acceptable,"[16] which the FCC understood required the guidelines to achieve the overall goal of Congress, *i.e.*, providing a comprehensive ratings system for programming containing violent, sexual or other indecent material.  *See Implementation of Section 551 of the Telecommunications Act of 1996*, 13 FCC Rcd. 8232, ¶¶ 19-20 (1998) ("*Video Programming Ratings Order*").  The *Video Programming Ratings Order* did not merely "approve[] the V-Chip rating rules in the abstract."  Opp. at 21.  Rather, the FCC made an administrative finding that the TV Parental Guidelines, and hence the V-Chip, were effective to protect children.  The FCC concluded that the voluntary ratings system met the congressional goal "of achieving an *effective* method by which the rating system, when used in conjunction with the v-chip technology, will provide parents with useful tools to block programming they believe harmful to their children." *Video Programming Ratings Order* ¶¶ 2, 24 (emphasis added).

---

[16] *See* Telecommunications Act of 1996, Pub. L. No. 104-104, § 551(e), 110 Stat. 56, 142.

The Government cannot have it both ways:  If the V-Chip were really ineffective, or if the implementation of the TV Parental Guidelines required some improvements, then the voluntary rating system would not be "acceptable," and the FCC would be in default of its statutory obligation.[17]  When the FCC can achieve its aims by providing consumers with the ability to block particular content they find offensive, without prohibiting the speech itself or precluding others from willingly receiving it, the Constitution precludes a partial or total ban on the speech.  *See Ashcroft* v. *ACLU*, 542 U.S. 656, 667 (2004); *Playboy*, 529 U.S. at 814-15.

**B.    The FCC's Indecency Standard Is Indistinguishable From the Standard Struck Down in *Reno* v. *ACLU*.**

The Government argues that the Supreme Court in *Pacifica* "necessarily signaled" that the FCC's definition of indecency was not vague.  *See* Opp. at 21-22.  A citation to *Pacifica* for this holding is conspicuously absent from the Government's Opposition because *Pacifica* expressly declined to consider a vagueness challenge to the FCC's regime.  *See Pacifica*, 438 U.S. at 742-43 (plurality opinion).  The best the Government can do is point to *ACT I*, which rejected a vagueness challenge based on the "seeming approval" of the Supreme Court in *Pacifica*.  *See ACT I*, 852 F.2d at 1339; *see also Dial Info. Servs. Corp.* v. *Thornburgh*, 938 F.2d 1535, 1541 (2d Cir. 1991) (relying on *Pacifica*).  But *ACT I* itself acknowledged that *Pacifica* had not addressed the vagueness challenge.  *See ACT I*, 852 F.2d at 1338.  The cases on which the Government relies are based on little more than inferences and assumptions from silence in Supreme Court opinions; they are a chimerical basis upon which to approve blatantly content-based regulation of speech.

While there is no vagueness holding in *Pacifica*, there is plainly one in *Reno* v. *ACLU*, 521 U.S. 844 (1997).  That case struck down the Communications Decency Act's ("CDA")

---

[17] *See id.*

definition of "indecent," which was essentially identical to the FCC's broadcast indecency definition. *See id.* at 870-74.[18]  Thus, in the only decision of the Supreme Court to address a vagueness challenge to an indecency regulation, the Court concluded that a definition like that at issue here was unconstitutionally vague.

None of the Government's reasons for distinguishing *Reno*'s vagueness holding are persuasive.  Most importantly, the part of *Reno* that distinguished *Pacifica* addressed only the degree of First Amendment protection to be afforded the internet and not the issue of vagueness—a fact Fox previously pointed out (*see* Motion at 28) but which the Government simply ignores.  Thus, it is unsurprising that *Reno* noted that broadcasting had historically received lesser First Amendment protection, *see Reno*, 521 U.S. at 867, but the degree of First Amendment protection is a much different matter than whether a content-based regulation of speech is impermissibly vague.  Similarly, it makes no difference to the vagueness analysis that broadcast indecency is regulated by a supposedly expert agency, *see id.*, because even expert agencies are forbidden from regulating on the basis of impermissibly vague standards that do not give broadcasters adequate notice of what they can and cannot say.[19]  Finally, the *Reno* Court distinguished *Pacifica* on the ground that the FCC had not imposed any penalty on the broadcaster in that case, *see id.* at 867, but that distinction obviously does not apply here, where the FCC has in fact assessed a punitive fine against Fox.

---

[18] The Government nowhere disputes that the substantive indecency standard at issue in *Reno* was virtually identical to the FCC's broadcast indecency standard.  *See* Motion at 28.

[19] Indeed, this Court owes no deference to the FCC's "expertise" in this area; that is why Congress provided for a "trial de novo."

## CONCLUSION

For the foregoing reasons, Fox respectfully requests that this Court dismiss the complaint.

Respectfully submitted,

/s/ David S. Petron
R. Clark Wadlow (DC Bar No. 33340)
Mark D. Hopson (DC Bar No. 394338)
James P. Young (DC Bar No. 445476)
David S. Petron (DC Bar No. 486325)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C.  20005
(202) 736-8000
mhopson@sidley.com
dpetron@sidley.com

September 5, 2008

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that September 5, 2008, the REPLY MEMORANDUM IN SUPPORT OF

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT was filed electronically with the

Clerk of the Court using CM/ECF, which will send notification that such filing is available for

viewing and downloading to the following counsel or record:


    Eric B. Beckenhauer (eric.beckenhauer@usdoj.gov)
    Jacqueline Coleman Snead (jacqueline.snead@usdoj.gov)
    Christopher Thomas Craig (ctcraig@sparkscraig.com)


                          /s/ David S. Petron
                          David S. Petron